UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

**HAROLD MICHAEL MILAM** *et al.*                                                                    **PLAINTIFFS**

**v.**                                                                    **CIVIL ACTION NO. 1:22-CV-P24-GNS**

**BOBBY DUNBAR** *et al.*                                                                    **DEFENDANTS**

## MEMORANDUM OPINION

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action. The matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss this action.

### I.

Plaintiff filed a complaint on his own paper (DN 1) and an amended complaint on a Court-supplied § 1983 form (DN 5).[1] Plaintiff was formerly incarcerated as a pretrial detainee at the Russell County Detention Center (RCDC). He purports to bring this action not only on his own behalf but also on behalf of "All Current Pre-Trial Inmates," "All Future Pre-Trial Inmates," and "All Convicted Inmates Current, Future, and Past." Plaintiff sues RCDC Jailer Bobby Dunbar and Gary Robertson in both their official and individual capacities. He also lists the following as Defendants - the City of Jamestown, the City of Russell Springs, and "Any Unknown Actors/Actresses."

The first three pages of the complaint consist of allegations regarding Plaintiff's conditions of confinement at Pulaski County Detention Center which is not a Defendant in this action.

---

[1] On the same date Plaintiff filed his amended complaint, he filed a letter requesting that the instant action be consolidated with another action Plaintiff initiated in this Court, *Milam v. Shearer et al.*, No. 1:21-cv-53-GNS (DN 8). However, upon review of the procedural history of both actions, the Court determined that the proper course of action was to administratively close the other action because it had become duplicative of the instant action.

Plaintiff then makes allegations against Defendant RCDC Jailer Dunbar. He specifically alleges that Defendant Dunbar had him transferred to another jail to prevent Plaintiff from "being able to file the needed paperwork to have his name placed on the ballet for [the seat of Russell County Jailer.]" Plaintiff states that he will prove at trial that if Defendant Dunbar had not had him transferred to other jails, "he would have his name on the ballet." Plaintiff states that Defendant Dunbar "in agreement with others including any unknown actors intend to deny the people of Russell County of a free and fair election again this election, just the same as they did in 2018, including [other County Jailers]."

Plaintiff alleges that he is now incarcerated at the Leslie County Detention Center (LCDC) which is one hundred miles from his home. Plaintiff states that he was transferred in retaliation "for his speech, his filing suit. . . ."

As relief, Plaintiff asks for a preliminary injunction "to allow his name on ballet, to ship him to Russell County for a trial, and compensation for pain and suffering."

In the amended complaint, Plaintiff states that he is gay and that he was subjected to a strip search when he was "booked into [RCDC]." He specifically alleges that:

> two unknown turn keys took [Plaintiff] in to the shower/bathroom and made him strip naked, lift up his sack, and shaft, made him spin 360 [degrees], bind over, spread his cheeks, and cough 3 times. Said turn keys then required [Plaintiff] to lift his left leg on a bench, bend over and cough. These turn keys became very angry and made comments that someone had better get [Plaintiff] out of here before they had to handle him. (Something to that extent). [Plaintiff] had asked if they had a warrant to strip search him and what their probable cause was. They pointed to a policy on the wall. It was obvious that [Plaintiff] had no weapons, he had shorts on, and a white tee shirt. Ball shorts. [Plaintiff] had been searched by arresting officer and nobody had any reasons to believed that [he] had drugs or contraband. Arresting officer advised that [Plaintiff] had been searched for drugs and weapons. [Plaintiff] believes the two turn keys knew [he] did not have weapons or drugs. [Plaintiff] asked if it was because he was gay that they were always wanting to strip search him or if it was that they were gay and they enjoyed what they were looking at (protected speech). This is when [Plaintiff] told that the guards that he felt his

privacy was violated because he was gay and did not feel that any need or right existed to strip searching him at this time.

Plaintiff states that he believes that this strip search violated his constitutional rights. He asserts that immediately following the strip search he asked for a law library and threatened to sue and that shortly thereafter he was shipped to PCDC. Plaintiff states that he believes he was shipped to PCDC because he was gay and because of his "protected speech." Plaintiff states that he has "got complaints in the past from other gay, lesbein about their inhumane treatment" by Defendant Dunbar and "unknown turn keys treating them different because of their status." Plaintiff states that "the fact that Defendant Dunbar traded him for another prisoner who takes up the same space as [Plaintiff] proves that he has been singled out for unequal treatment because of his speech and/or because he is gay. . . . Why else would a Jailor waist tax dollars and then 'trade [Plaintiff] for a strait man?' Absolutely no other explanation exists . . ."

Plaintiff states that because he was transferred to another jail, he has been denied "visitation and association with his local friends, and has caused [it to be] harder for [Plaintiff]'s friends to upload money." He asserts that the transfer has interfered with his love life and restricted his ability to communicate, "mail mail, and file paper that would otherwise had would have been filed had [he] remained in Russell County." Plaintiff then states that his transfer could have been in retaliation for announcing that he was going to "run for jailer" against Defendant Dunbar.

As relief, Plaintiff seeks damages and injunctive relief in the form of being transferred back to RCDC, the removal of Defendant Dunbar from his position as RCDC Jailer, and the placement of Plaintiff's name on the ballot for the office of Jailer.

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A,

3

the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

### III.

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person

acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Claims Brought on Behalf of Others

The Court first addresses the claims Plaintiff attempts to bring on behalf of "All Current Pre-Trial Inmates," "All Future Pre-Trial Inmates," and "All Convicted Inmates Current, Future, and Past."

Plaintiff can represent himself in this action pursuant to 28 U.S.C. § 1654 which provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." Under this statute, "[a] nonlawyer can't handle a case on behalf of anyone except himself." *Georgakis v. Illinois State Univ.*, 722 F.3d 1075, 1077 (7th Cir. 2013); *see also Zanecki v. Health Alliance Plan of Detroit*, 576 F. App'x 594, 595 (6th Cir. 2014) (holding that because "*pro se*" means to appear on one's own behalf, a person may not appear *pro se* on another person's behalf in the other's cause of action); *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) (holding that § 1654 "does not permit plaintiffs to appear *pro se* where interests other than their own are at stake"); *Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41, 42 (1st Cir. 1982) (stating that "[t]he federal courts have consistently rejected attempts at third-party lay representation" and that "[b]y law an individual may appear in federal courts only *pro se* or through legal counsel") (citing § 1654).

Thus, Plaintiff's claims brought on behalf of other individuals must be dismissed.

### B. Claims Brought Against Defendants Robertson, the City of Jamestown, and the City of Russell Springs

The Court next turns to Defendants Robertson, the City of Jamestown, and the City of Russell Springs.

5

It is a basic pleading essential that a plaintiff must attribute factual allegations to particular Defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 U.S. App. LEXIS 30782, at *7 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, 904 F.2d 708, 1990 U.S. App. LEXIS 9928, at *3 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given *pro se* complaints.").

Because neither the complaint nor the amended complaint contains any allegations against Defendant Robertson, the City of Jamestown, or the City of Russell Springs, Plaintiff's claims against them must be dismissed for failure to state a claim upon which relief may be granted.

### C. Remaining Claims

#### 1. Invasion of Privacy Claim

The Court next addresses Plaintiff's claim that the strip search he was subjected to upon booking into RCDC violated his constitutional rights. Plaintiff argues that the strip search violated his privacy because the officers who conducted the search did not have reason to believe he had drugs or contraband and because Plaintiff is gay.

As to Plaintiff's first argument, the Supreme Court has held that "detainees may be subjected to suspicionless strip searches as part of the jail's intake process." *See Florence v. Bd. of Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012). Moreover, "courts have acknowledged the degree to which strip searches may humiliate and 'invade the personal privacy of inmates,' and have nonetheless upheld the use of strip searches where they further the legitimate interest of discovering contraband." *Walker v. Ponte*, No. 14 CIV. 8507 (ER), 2016 U.S. Dist. LEXIS 110062, at *11-12 (S.D.N.Y. Aug. 18, 2016) (citing *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) ("There is no question that strip searches may be unpleasant, humiliating and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation.")). And although the Sixth Circuit has recognized some limited circumstances in which a prison strip search might raise a Fourth Amendment privacy claim, Plaintiff's allegations do not suggest that any of those circumstances were present when he was strip-searched. *See Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992) (recognizing the facial validity of a Fourth Amendment invasion-of-privacy claim where male prisoners

7

were allegedly strip searched in the prison yard in the presence of other inmates and female officers); *Kent v. Johnson*, 821 F.2d 1220, 1226-27 (6th Cir. 1987) (holding that a Fourth Amendment challenge to a prison policy requiring male prisoners to expose their naked bodies to regular and continuous surveillance by female officers was facially valid).

Thus, the Court finds that that Plaintiff's privacy claim regarding his strip search must be dismissed for failure to state a claim upon which relief may be granted.

### 2. Retaliation Claims

The Court next turns to Plaintiff's claims that Defendant Dunbar transferred him to another jail because Plaintiff stated that he was going to file a lawsuit against RCDC and because he was going to run for the office of Jailer against Defendant Dunbar.

A prisoner's claim that prison officials retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc). To succeed on a retaliation claim, a plaintiff must show that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated by the protected conduct. *Id*. at 394.

The Sixth Circuit has held that "transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights," *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 358 (6th Cir. 2006) (quoting *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003)), and because "transfer is merely an ordinary incident of prison life." *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (citation omitted). Moreover, the Sixth Circuit has specifically held that at a prison transfer does not constitute an adverse action simply because it makes it more difficult for friends and

8

family to visit the prisoner, as Plaintiff alleges here. *See Friedmann v. Corr. Corp. of Am.*, 11 F. App'x 467, 471 (6th Cir. 2001) (holding that a transfer to another facility that was farther away from visitors was not an adverse action).

In addition, Plaintiff's claim that Defendant Dunbar transferred him to prevent him from running for the office of Jailer is simply too vague and conclusory to state a retaliation claim. He does not state what steps he had taken to be put on the ballot (or whether he was even qualified to be put on the ballot) or explain how the transfer actually prevented him from running for the office of Jailer.

Thus, the Court concludes that Plaintiff's retaliation claims must also be dismissed for failure to state a claim upon which relief may be granted.

### 3. Discrimination Claims

The Court construes Plaintiff's claim that Defendant Dunbar transferred him to another jail because he is gay as a claim that Defendant Dunbar violated his rights under the Equal Protection Clause of the Fourteenth Amendment. The Court also construes Plaintiff's allegation that he was strip searched because he is gay as an equal protection claim.

"The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)). "Although sexual orientation has not been recognized in this circuit as a suspect or quasi-suspect classification, homosexuals do constitute an 'identifiable group' for equal protection purposes." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (citation omitted).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'") (citation omitted); *Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) ("Plaintiffs . . . fail to plead the existence of a similarly situated comparator . . . [therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim.").

Here, Plaintiff fails "to plead the existence of a similarly situated comparator" regarding either his transfer or his strip search. Thus, he has not presented sufficient factual matter to state a plausible equal protection claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. For this reason, the Court will dismiss Plaintiff's equal protection claims for failure to state a claim upon which relief may be granted.

## IV.

For the foregoing reasons, the Court will enter a separate Order dismissing this action.

Date: April 27, 2022

Greg N. Stivers, Chief Judge
United States District Court

cc: Plaintiff, *pro se*
Defendants
Russell County Attorney
4416.011